# In the United States Court of Federal Claims

No. 21-1084
(Filed:  27 August 2021[*])

```
*****************************************
10 TANKER AIR CARRIER, LLC,              *
                                         *
                      Plaintiff,         *
                                         *
v.                                       *
                                         *
THE UNITED STATES,                       *
                                         *   Post-Award Bid Protest; MJAR;
                      Defendant,         *   Motion to Dismiss; Blue & Gold;
                                         *   Best-Value Determination;
and                                      *   Overall Price; Mistake of Fact;
                                         *   Unstated Evaluation Criteria.
AERO-FLITE, INC.,                        *
                                         *
                 Defendant-Intervenor,   *
                                         *
and                                      *
                                         *
ERICKSON AERO TANKER, LLC,               *
                                         *
                 Defendant-Intervenor.   *
                                         *
*****************************************
```

## OPINION AND ORDER

*James G. Peyster* of Crowell & Moring, LLP, with whom was *Thomas P. Humphrey*, all of Washington, DC, for plaintiff.

*Vijaya S. Surampudi* of the Department of Justice, with whom were *Brian M. Boynton, Martin F. Hockey Jr.,* and *Tara K. Hogan*, all of Washington, DC, and *Antonio Robinson* of the Department of Agriculture, of Washington, DC, for defendant.

*Neil H. O'Donnell* of Rogers Joseph O'Donnell, PC, with whom were *Lucas T. Hanback* and *Eleanor M. Ross*, all of San Francisco, CA, for defendant-intervenor Aero-Flite, Inc.

---

[*] This Opinion and Order was originally filed under seal on 24 August 2021 pursuant to the protective order in this case.  The Court provided the parties the opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions no later than 27 August 2021 at 12:00 p.m.  On 26 August 2021, the parties emailed informing the Court no party seeks redaction of the Opinion.  The Opinion is now reissued for publication with a few minor, non-substantive corrections.

> *Jolyon A. Silversmith* of KMA Zuckert, LLC, of Washington, DC, and *Rachel B. Trinder* of Trinder Aviation & Aerospace Advocacy, PLLC, of Washington, DC, for defendant-intervenor Erickson Aero Tanker, LLC.

**HOLTE, Judge.**

Plaintiff 10 Tanker Air Carrier, LLC ("10 Tanker") brings this bid protest challenging the U.S. Forest Service's ("USFS") award of a contract for Next Generation 3.0 Large Airtanker ("Next Gen 3.0") aerial firefighting to defendant-intervenors Erickson Aero Tanker, LLC d/b/a Aero Air ("Erickson") and Aero-Flite, Inc. ("Aero-Flite"), and awardee Coulson Aviation (USA) ("Coulson"), under Solicitation No. 12024B18R9013.  Plaintiff and defendant-intervenors have extensive experience on federal aerial firefighting service contracts.  Admin. R. ("AR") at 454 (Erickson proposal), 5621 (Aero-Flite proposal), 7107 (10 Tanker proposal), ECF No. 27.  While this contract and solicitation have been through two post-award protests, as well as corrective action from the USFS, Erickson, Aero-Flite, and Coulson have consistently remained the awardees.  Pending before the Court are plaintiff's motion for judgment on the administrative record ("MJAR"), the government's cross-MJAR and motion to dismiss ("MTD"), defendant-intervenors' cross-MJARs and motions to dismiss.  For the following reasons, the Court **DENIES** plaintiff's MJAR, and **GRANTS** the government's and defendant-intervenors' MJARs, and alternatively **GRANTS** the government's and defendant-intervenors' motions to dismiss pursuant to RCFC 12(b)(6) and the Federal Circuit's decision in *Blue & Gold*.

## I.   Background

### A.   Previous Next Generation Contracts

The rise in wildfires across the United States poses a critical public safety issue, putting "individuals, their homes, and wildlife at risk from damage from fires."  Def.'s Reply to Pl.'s Mot. for J. on the Admin. R., Mot. to Dismiss, and Cross-MJAR ("Gov't MTD & Cross-MJAR") at 28, ECF No. 31.  Since 2011, the USFS has contracted out air tankers to "provide critical front-line firefighting services nationwide." *Id.*; *see* AR at 19 (acquisition plan).  The USFS is the only federal agency contracting for firefighting services.  MJAR Oral Argument Transcript ("Tr.") at 17:4–5, ECF No. 47.  The USFS primarily uses contractor-owned turbine-powered, fixed-wing tankers from various companies, namely large air tankers ("LATs") and very large air tankers ("VLATs").  AR at 45 (acquisition plan); Tr. at 12:21–22.  The USFS issued two previous requests for proposals ("RFPs") for Next Generation Airtanker ("Next Gen") services—called Next Gen 1.0 and Next Gen 2.0.  AR at 19; Tr. at 11:1–6 ("There are Next Gen 1.0 and Next Gen 2.0, which have been staged throughout the last several years.").  Next Gen 1.0 began in 2013 and expires in 2022, and Next Gen 2.0 began in 2015.  Pl. 10 Tanker Air Carrier, LLC's Mot. for J. on the Admin. R. ("Pl.'s MJAR") at 6, ECF No. 28.  Next Gen 3.0 provides for fleet services with fire retardant delivery systems to fight wildland fires, similar to the USFS's previous Next Gen Airtanker service contracts.  AR at 78 (solicitation); Tr. at 30:20–22.  The government planned the Next Gen 3.0 contracts to "begin service in calendar year 2019," with awardees to "have their offered aircraft ready to perform for the 2019 fire season."  AR at 292.  Performance for Next Gen 3.0 instead began around 1 June 2021, at least in part because of

delays caused by 10 Tanker's protests.  Tr. at 9:7–13; *see, e.g.*, AR at 11203 (10 Tanker 6 April 2020 GAO protest), 12530 (10 Tanker 6 November 2020 GAO protest).

While Next Gen contracts are primarily for LATs, the USFS accepts both LATs and VLATs for submission.  Tr. at 15:2–20.  The USFS awarded contracts to 10 Tanker in the past through its LAT agreements despite 10 Tanker's planes being larger than its competitors' and typically considered VLATs.  *Id.* at 15:7–13 ("10 Tanker is an active contractor under the NextGen 1 [sic] large air tanker . . . contract.  It's an active contractor under the Next Generation 2.0 large air tanker contract, which is a LAT contract, not a VLAT contract.").  Plaintiff has four planes, two of which are currently tied to earlier Next Gen contracts.  *Id.* at 13:3–23.  The USFS has never issued an RFP for VLAT planes, "only large airtankers," *Id.* at 16:14–22, and its contracts are "oriented towards a tanker in the LAT range."  *Id.* at 27:1–3.  Next Gen contracts 1.0 and 2.0 are still ongoing and are set to expire on 31 December 2022 and 31 December 2025, respectively.  *Id.* at 11:13–15.  The timelines of these "exclusive use" lease contracts overlap to allow the USFS "to maximize the amount of planes it has at its disposal."  Tr. at 11:21–25.  While the USFS also employs "call-when-needed" blanket purchase agreements to fight wildland fires, the agency primarily uses "exclusive use" lease agreements because tanker services are guaranteed under such contracts.  *Id.* at 14:2–15 ("[E]veryone's planes that are not currently under exclusive-use are operating under various call-when-needed agreements.  So they're all available to the Forest Service upon call, but they're not guaranteed. . . ."), 44:10–11 ("Exclusive-use contracts are the primary contracts.").  The tankers drop the "majority of the retardant . . . from exclusive-use" agreements because of the guaranteed, consistent nature of the contract.  *Id.* at 44:11–12.  The call-when-needed agreements are more expensive than the Next Gen contracts "due to the contingency basis of th[e] contract."  *Id.* at 42:22–25.

The USFS used the price history and expenditures from past contracts to determine pricing estimates for the Next Gen 3.0 contract.  AR at 24 ("The estimates were developed utilizing the recent pricing history of similar contract efforts and the total expenditures under those contracts.") (acquisition plan).  The parties confirmed at oral argument this pricing history came from the Next Gen 1.0 and 2.0 contracts.  Tr. at 18:14–19.  The pricing formula has remained the same throughout the Next Gen contracts.  *Id.* at 19:13–17 ("[T]he formula in the current solicitation has been the same for the previous air tanker solicitations.  That has not changed since at least 2011 or 2012.").  The USFS, however, changed its overall best-value tradeoff determination since the Next Gen 2.0 contract.  *Id.* at 20:6–8, 12.  While the Next Gen 2.0 contract gave more weight to technical evaluation factors, the Next Gen 3.0 contract made price equal to all the technical components combined, giving more weight to price.  *Id.* at 22:18–20 ("[T]echnical was significantly more important than price in 2.0, where here technical is the same as price or at least just as important as price.").  Counsel for the USFS explained at oral argument:

> [T]he only change I'm aware of is that the Forest Service wanted to prioritize price more than it did in 2.0.  That's why price is equal to technical versus in 2.0.  In 2.0, technical was significantly more than price.

*Id.* at 30:20–24.  Counsel for the USFS also explained the agency made this change in the best-value tradeoff criteria because "most of the offerors . . . were technically fine, so they wanted to

prioritize the overall price in considering who to award to." *Id.* at 25:10–13.  The law permits USFS to change its solicitation requirements each time it issues a contract.  Tr. at 34:6–13 ("[T]here's nothing in the Competition in Contracting Act or in the Federal Acquisition Regulation that prevents the Forest Service from rethinking its requirements in the way that it states them in the RFP.").

### B.    The Solicitation

The USFS issued the solicitation on 3 December 2018, and proposals were due 14 February 2019.  AR at 74 (initial solicitation issued by the USFS), 281 (solicitation amendment to the Next Gen 3.0 contract detailing the proposal due date).  The RFP states the USFS will award five firm-fixed price contracts, with awards going to between one and five contractors, for up to five years.  AR at 78 (solicitation).  These contracts have a one-year base period and four one-year options.  *Id.*  The RFP established the contract as a "small business set-aside" and stated, "the primary mission for airtankers under this contract is dropping retardant on wildland fires."  AR at 281, 300 (section of the RFP detailing the work statement for the contract).  The USFS also permitted offerors to submit alternate proposals in addition to their main proposal for the RFP.  AR at 264 (solicitation).

The solicitation calls for each leased plane to be available 160 days per year during an interval called the Mandatory Availability Period ("MAP"), beginning 1 June.  AR at 24 (acquisition plan), 294–95 (solicitation).  The leased planes will "operate on a 6 days on, 1 day off schedule."  AR at 298 (solicitation).  The air tankers' priority is responding to "fires with typical missions of one hour or less."  *Id.* at 86 (solicitation).  Next Gen contracts are focused on initial attacks, meaning the tankers must respond rapidly.  Tr. at 45:12–13.  Air tankers' "immediate response actions occur in the first burning period and are intended to support personnel either on scene or enroute [sic] to the incident in containing the fire when it is least costly to do so."  AR at 86 (solicitation).  The RFP further detailed, "[a]irtankers shall operate only from the airtanker bases identified for their airtanker type."  *Id.* at 100 (solicitation).  Tankers also "shall carry the maximum contract retardant dispensing payload and shall carry the contract fuel load (no less than 2.5 hours) when departing from an airport in support of firefighting operations."  *Id.* at 298 (solicitation).  The RFP additionally requires offerors to submit information about aircraft safety and certification.  *Id.* at 87 (portion of the solicitation detailing aircraft requirements).

The USFS planned to award the contract to the proposal on a best-value basis under five factors, the first four of which are categorized together as technical criteria:  (1) structural integrity, maintenance, and equipment; (2) safety elements; (3) past performance; (4) organizational experience; and (5) price.  AR at 234–37 (solicitation).  When combined, the technical factors—factors one through four—are to be given approximately equal weight as price alone.  *Id.*  The solicitation provides the following formula for price evaluation:  "Price will be evaluated by using a combination of the number of days awarded times the proposed availability rate plus an estimated number of flight hours (250) times the proposed flight rate plus hourly fuel burn rate times the Jet A fuel price ($5.21 per gallon) to determine the overall price per line item

for evaluation purposes only." *Id.* at 451 (solicitation).[1]  This evaluation method considers availability rate, flight rate, and fuel costs.  *Id.*  The solicitation also notes:  "In addition to total overall price, the Government will consider other price aspects, including price per gallon of retardant delivered (total cost divided by number of gallons delivered with 250 drops per year); however, total overall price will be the most important price consideration."  *Id.*  The solicitation also states:  "Award will be made to those offerors (1) whose proposal is technically acceptable and (2) whose technical/cost relationship is the most advantageous to the government after a best value tradeoff analysis has occurred."  *Id.* at 238.  After offerors submitted proposals, the USFS held discussions with five offerors in the competitive range.  AR at 11142–43 (technical evaluation board consensus report from source selection decision document).

### C.   Plaintiff's Proposal

10 Tanker's proposal stressed its firefighting experience of nearly 12 years:  "10 Tanker has been under contract with [the] USFS to provide aerial firefighting services on a continual basis since 2009."  *Id.* at 12536 (10 Tanker's GAO protest of the re-awards under the USFS's RFP).  Plaintiff explained, "when 10 Tanker flies a firefighting mission, its plane reliably delivers 9400 gallons of fire retardant/suppressant onto the ground to assist in firefighting efforts."  Pl.'s MJAR at 7.  It also reasoned its price per gallon of fire retardant was relatively low at $4.73, particularly compared to its competitors with Coulson at $8.31, Erickson at $9.40, and Aero-Flite at $10.72.  *Id.* at 13.  Plaintiff's overall price estimate was $55,606,875.  AR at 12933 (source selection decision).  Plaintiff also chose to provide an alternate proposal suggesting a new pricing method focusing on price per gallon.  *Id.* at 8364 (10 Tanker's proposal).

### D.   Defendant-Intervenors' Proposals

Defendant-intervenor Erickson "has been involved with Next Gen tanker aerial firefighting since initial discussions took place with [the] USFS in 2011."  AR at 454 (Erickson's proposal).  For this contract, Erickson offered three air tankers, all of which hold a "dispensable payload of 3,000 gallons."  *Id.*  Erickson's overall price estimate was $35,250,765 per air tanker for an award of two air tanker contracts.  *Id.* at 11185 (Erickson post-award debriefing).

Defendant-intervenor Aero-Flite "has provided aerial forest fire management services to a wide variety of United States and international forest protection agencies for over 50 years" and has contracted with the USFS prior to its proposal for the Next Gen 3.0 contract.  AR at 5621, 5623 (Aero-Flite's proposal).  Aero-Flite's tankers have a retardant payload of 3,000 gallons and its "RJ85 Airtanker meets all [the] USFS needs for a Next Generation Large Type 1 Airtanker."  *Id.* at 5623–24.  Aero-Flite's overall price estimate was $40,194,305.  *Id.* at 12933 (source selection decision).

---

[1] "Overall Price = [Total Daily Availability Rate Pricing for 5 years] + ([Total Flight Costs Per Hour] x 250 hours per year x 5 years)."  Pl.'s MJAR at 34 (emphasis omitted).

**E.      Initial Next Gen 3.0 Award and 10 Tanker's GAO Protest of the First Next Gen 3.0 Award**

The technical evaluation board ("TEB") met on 11 March 2019 to evaluate proposals and establish the competitive offerors.  AR at 11142 (TEB consensus report from the USFS's source selection document).  The TEB excluded four offerors—Air Spray, Air Strike Firefighters, Cal Alaska Helicopters, and Global Super Ranker—from the competitive range in addition to excluding some of Neptune Aviation's aircraft for failing to meet the solicitation requirements.  *Id.* at 11143.  After Aircraft pre-award inspections occurred from 18 to 20 June 2019, the contracting officer held discussions with offerors in the competitive range.  *Id.* at 11126 (summary of offerors).  TEB members thereafter evaluated the proposals and provided ratings.  *Id.*  In terms of overall best value, the USFS ranked Coulson first, Aero-Flite second, Erickson third, Neptune fourth, and 10 Tanker fifth.  *Id.* at 11137 (source selection decision).  For the technical rating, the USFS ranked Coulson first, Aero-Flite second, 10 Tanker third, Erickson fourth, and Neptune fifth.  *Id.*  The source-selection authority ("SSA") noted "10 Tanker's total overall price is significantly higher than all other offerors," with 10 Tanker offering $55,606,875, while Neptune offered $40,080,650; Aero-Flite offered $40,194,305; Coulson offered $41,528,725; and Erickson offered $35,250,765 per air tanker for an award of two air tanker contracts.  AR at 11137 (source selection decision before corrective action), 11185 (Erickson post-award debriefing).  On 26 March 2019, the USFS awarded contracts to Coulson, Erickson, and Aero-Flite.  *Id.* at 11139.  Coulson received one line-item award while Erickson and Aero-Flite received two line-item awards each.  *Id.*  The SSA stated in its source selection decision that 10 Tanker's total overall price was significantly higher than all other offerors, despite its price per gallon being better than other offerors.  *Id.* at 12933 (source selection decision).  The SSA stated cost per gallon is "less relevant when the total overall price is so significantly higher than other qualified offerors."  *Id.*

Plaintiff filed a post-award protest with the GAO on 6 April 2020 alleging the USFS unreasonably evaluated its proposal.  *Id.* at 11203 (protest by 10 Tanker of the awards under the USFS's Next Gen 3.0 RFP).  It asserted the USFS:  (1) unfairly down-scored 10 Tanker for "airbase utilization" limitations without raising the issue in previous discussions; (2) used unstated evaluation criteria as a part of their best-value determination in analyzing airbase utilization; (3) failed to consider price per gallon pricing; and (4) engaged in an unlawful best-value determination.  AR at 11204–06 (protest by 10 Tanker of the awards under the USFS's Next Gen 3.0 RFP).  The USFS filed a motion for partial dismissal on 27 April 2020, which the GAO granted on 1 May 2020.  *Id.* at 11534 (10 Tanker's request for partial dismissal), 11913 (the GAO's response to 10 Tanker's request).  The GAO dismissed "the following basis of protest: . . .  [t]he Government did not properly credit all airtanker bases from which 10 Tanker can operate[;] [a]irbase operations were given undue weight[; and t]he challenge to the fuel price estimate."  AR at 11913.  The GAO did not dismiss "the following bases of protest:  [t]he agency improperly considered the number of bases out of which 10 Air Tanker could operate[; and t]he agency did not meaningfully consider 10 Air Tankers' price per gallon advantage."  *Id.*  The GAO held outcome prediction alternative dispute resolution ("ADR") on 9 June 2020 and sustained 10 Tanker's protest of the "airbase utilization," stating the unstated criterion was outside the scope of the RFP's stated requirements.  *Id.* at 12463 (the USFS's notice and explanation of corrective action).  The USFS stated on 12 June 2020 it would take voluntary

corrective action in response to the GAO's outcome prediction. *Id.* As part of its corrective action, the USFS stated it would "review the evaluation documents; in accordance with the terms of the Solicitation, make a new technical evaluation board consensus to generate new ratings that do not take into account airbase utilization; make a new award decision; and terminate for convenience any awardee's current contract if a different proposal is selected for award." *Id.* at 12463–64 (the USFS's notice of corrective action). The GAO then dismissed the protest as academic on 18 June 2020. *Id.* at 12465 (GAO decision).

### F.     Corrective Action, Round 2 Award Decision, and 10 Tanker Round 2 Debriefing

The USFS engaged in corrective action from 18 June 2020 to 27 October 2020. Pl.'s MJAR at 17. During this time, the agency convened a new board to address the technical evaluation and create new ratings, not considering airbase utilization. Gov't MTD & Cross-MJAR at 9. Offerors were not permitted to revise proposals. Pl.'s MJAR at 17. The USFS did not engage in discussions with the offerors nor did the USFS amend the solicitation. On 27 October 2020, the USFS notified 10 Tanker of its exclusion from the award and its reselection of Coulson, Aero-Flite, and Erickson. *Id.* The SSA noted "10 Tanker's total overall price is significantly higher than all other offerors," with 10 Tanker offering $55,606,875, while Neptune offered $40,080,650; Aero-Flite offered $40,194,305; Coulson offered $41,528,725; and Erickson offered $35,250,765 per air tanker for an award of two air tanker contracts. AR at 12577 (10 Tanker 30 October 2020 post-award debriefing), 12933. The SSA further reasoned, "Cost Per Gallon is a price consideration that becomes more important when the total overall price is closer among offerors." *Id.* The USFS stressed, "10 Tanker's Cost Per Gallon price is better than all of the other offerors but becomes less relevant when the total overall price is so significantly higher than other qualified offerors." *Id.* The SSA also explained Coulson, Aero-Flite, and Erickson all presented acceptable proposals with reasonable total overall prices. *Id.*

Plaintiff received a post-award briefing and learned the USFS evaluated its proposal as having no non-price weaknesses, removing the "base utilization" weakness. AR at 12525 (the USFS's post award debriefing). Plaintiff's non-price rating increased from "Acceptable" to "Acceptable+," leaving price as its only weakness and pushing 10 Tanker to the top of the non-price evaluation factors. *Id.* Plaintiff ranked last overall, however, based on its significantly higher price. *Id.* at 12483 (trade-off analysis).

### G.     10 Tanker's GAO Protest of the Second Next Gen 3.0 Award

Plaintiff filed a second protest with the GAO on 6 November 2020 challenging the re-award decision. *Id.* at 12530 (protest by 10 Tanker of the re-awards under the USFS's RFP). Plaintiff alleged: "in making the best value tradeoff decision the agency failed to meaningfully consider 10 Tanker's significant advantage in price per gallon delivered." *Id.* at 12982 (the GAO's dismissal of 10 Tanker's protest). Plaintiff further argued the decision was based on price premium, which only existed when 10 Tanker's price was compared to other offerors' regarding fire retardant to be delivered. *Id.* at 12940 (10 Tanker's supplemental protest). The GAO denied the protest, stating: "10 Tanker is in essence challenging the price evaluation scheme established in the solicitation." AR at 12982 (the GAO's decision to dismiss 10

Tanker's protest issued on 9 February 2021). The GAO reasoned: "10 Tanker knew, however, from the solicitation that the agency considered total overall price, which did not include price per gallon of retardant delivered, as the most important price consideration." *Id.* The GAO further explained, "if 10 Tanker believed that the only realistic way to compare cost to the government was by comparing price per gallon of retardant delivered, 10 Tanker was required to raise this issue prior to the closing time for the receipt of proposals." *Id.* at 12982–83 (the GAO's decision to dismiss 10 Tanker's protest issued on 9 February 2021). The USFS has since awarded contracts to Coulson, Aero-Flite, and Erickson which began on 16 April 2021, 18 April 2021, and 21 May 2021 respectively. Gov't MTD & Cross-MJAR at 10.

### H.     Procedural History Before This Court

Plaintiff filed its complaint in this bid protest on 19 March 2021, along with a motion to seal the complaint, a proposed redacted complaint, and a motion for protective order. *See* Compl. for Decl. & Inj. Relief, ECF No. 1; Pl.'s Mot. to File Docs. Under Seal, ECF No. 2; Redacted Compl. for Decl. & Inj. Relief, ECF No. 4; Pl.'s Mot. for Protective Order, ECF No. 3. On 20 April 2021, plaintiff filed its MJAR. *See* Pl.'s Mot. for J. on the Admin. R., ECF No. 29. On 11 May 2021, the government filed its cross-MJAR and motion to dismiss. *See* Gov't MTD & Cross-MJAR. On the same day, defendant-intervenor Aero-Flite, Inc., filed its cross-MJAR, which included a request to dismiss the complaint under *Blue & Gold* but did not formally move to dismiss. *See* Intervenor-Def.'s Cross-Mot. for J. on the Admin. R. & Resp. to Pl.'s Mot. for J. on the Admin. R., ECF No. 32 ("Aero-Flite's Cross-MJAR"). Defendant-intervenor Erickson Aero Tanker, LLC, filed its cross-MJAR as well as a motion to dismiss on 11 May 2021. Def.-Intervenor's Mot. to Dismiss, Opposition to Pl.'s Mot. for J. on the Admin. R., and Cross-Mot. for J. on the Admin. R., ECF No. 30 ("Erickson's Cross-MJAR"). Plaintiff filed its reply in support of its MJAR and response to defendant-intervenors' and the government's cross-MJARs on 25 May 2021. *See* Pl.'s Reply in Support of Its Mot. for J. on the Admin. R. and Opposition to the Cross Mots. for J. on the Admin. R. of Def. and Def.-Intervenors, ECF No. 34 ("Pl.'s Reply & Resp."). On 8 June 2021, the government and defendant-intervenors filed replies in support of their cross-MJARs. *See* Def.-Intervenor's Reply in Support of Its Mot. to Dismiss & Cross-Mot. for J. on the Admin. R., ECF No. 39; Def.-Intervenor's Reply in Support of Its Cross-Mot. for J. on the Admin. R., ECF No. 40; Def.'s Reply in Support of Its Cross-Mot. for J. on the Admin. R. and Mot. to Dismiss, ECF No. 42 ("Gov't Reply"). The Court held oral argument on the parties' cross-MJARs on 30 June 2021.

## II.    Legal Standard

### A.     Bid Protest Jurisdiction & APA Standard of Review

The Tucker Act grants this Court jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). To be an interested party, a protestor must show it is an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract

or by failure to award the contract." *PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1356 (Fed. Cir. 2018) (quoting 31 U.S.C. § 3551(2)(A)).

In rendering such judgment, this Court "review[s] the agency's decision pursuant to the standards set forth in section 706 of title 5" of the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). "Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. §706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000)). Under this standard, "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). "Courts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43). "The arbitrary and capricious standard applicable here is highly deferential" and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

**B.    Judgment on the Administrative Record in a Bid Protest**

"RCFC 52.1(c) provides for judgment on the administrative record." *Huntsville Times Co. v. United States*, 98 Fed. Cl. 100, 104 (2011); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005). Rule 52.1(c) was "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *Bannum*, 404 F.3d at 1356.

This Court may set aside a contract award if: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Domenico Garufi*, 238 F.3d at 1332. "When a challenge is brought on the second ground, the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* at 1333 (quoting *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)). "[D]e minimis errors do not require the overturning of an award." *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) (emphasis omitted). "De minimis errors are those that are so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main purposes of the contemplated contract will not be affected if they are." *Id.* (quoting *Andersen Consulting v. United States*, 959 F.2d 929, 935 (Fed. Cir. 1992)). A bid protest plaintiff must establish alleged "errors in the procurement process significantly prejudiced [the plaintiff]" by showing "there was a 'substantial chance' it would have received the contract award but for the errors." *Bannum*, 404 F.3d at 1353 (quoting *Info. Tech. & Apps. Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)).

Technical ratings fall within a category of "discretionary determinations of procurement officials that a court will not second guess." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). "Procurement officials have substantial discretion to determine which proposal represents the best value for the government." *Id.* A protester alleging unequal treatment in a technical evaluation "must show that the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020).

### C.    Permanent Injunction

When deciding whether a permanent injunction is warranted, a court considers:

(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).

## III.   Parties' Arguments

### A.    Plaintiff's Arguments and the Government's and Defendant-Intervenors' Merits Responses

Plaintiff argues the USFS's best-value determination was contrary to law because the Competition in Contracting Act ("CICA") and the Federal Acquisitions Regulation ("FAR") require an agency's "primary concern" to be "the overall price the Government will actually pay" in making an award. Pl.'s MJAR at 20 (citing 41 U.S.C. § 3306(c)(1)(B) (2018); FAR § 15.405). Plaintiff also asserts 10 Tanker's cost to the government is lower than the awardees' by highlighting "what offerors were required to price in their proposals: . . . (i) cost to [the] USFS to exclusively lease the proposed aircraft for the 'mandatory availability period' for each year of the contract, and (ii) the cost to [the] USFS to activate the aircraft for a firefighting mission when fire retardant is needed at an active fire site." Pl.'s MJAR at 22. Plaintiff argues the "USFS's 'best value' determination failed to consider the cost to the Government of the competing proposals because it failed to consider 10 Tanker's pricing to do an equivalent amount of work as compared to its competitors." *Id.* at 28. Plaintiff asserts the SSA made its determination upon a mistake of fact involving a price premium on 10 Tanker's proposal. *Id.* at 30. Plaintiff argues the price premium SSA alleges was taken from the overall price calculation and "is not based on an assessment of what 10 Tanker's contract will actually cost the Government compared to its competitors, as required by statute, because no such 'price premium' will ever be paid." *Id.* at 31 (emphasis omitted). Plaintiff reasons "the SSA's decision to . . . disregard 10 Tanker's price per gallon advantage during the 'best value' assessment was contrary to law because it was based on an unstated evaluation criterion"—the overall closeness of pricing assessments. *Id.* at 34. Plaintiff explains the "SSA dismissed the significance of 10 Tanker's huge price per gallon advantage on the basis that price per gallon 'becomes less

relevant when the total overall price is so significantly higher than other qualified offerors.'"  *Id.*
Because the RFP included a consideration of "Price Per Gallon," plaintiff argues the SSA's
"commitment to evaluate and consider price per gallon pricing was not conditional or contingent
on the results of other aspects of the pricing evaluation."  Pl.'s MJAR at 33 (emphasis omitted).

The government argues the USFS's determination was consistent with the law because it
"adequately evaluated offerors' total overall price and weighed it against the technical ratings
developed by the Technical Evaluation Board."  Gov't MTD & Cross-MJAR at 18.  The USFS
"followed a detailed formula that incorporated several different metrics that together
demonstrated what the Government will actually pay with respect to the use of the air tankers"
and this formula was made clear in the solicitation to offerors.  *Id.*  While the solicitation noted
the SSA could weigh other price considerations, the solicitation was explicit about the total
overall price being the most important of all pricing considerations.  *Id.*  The government
responds 10 Tanker "cannot show that using overall price instead of price per gallon as the
principal price factor was arbitrary, because doing so was consistent with the solicitation
criteria."  *Id.* at 20.  The government shows "[t]he solicitation provided that total overall price is
the most significant price factor" and "[a]s such, there is no question that the Forest Service
correctly relied on this factor to evaluate offerors for the purposes of the best value tradeoff."  *Id.*
The government explains, "10 Tanker's price per gallon was significantly better but, because its
total overall price, which was the most important factor, was so much higher than the other
awardees, the price per gallon accordingly lost relative importance."  Gov't MTD & Cross-
MJAR at 23.  The government argues the SSA is afforded "substantial discretion" in making its
decision, and this discretion "should not be disturbed, in the absence of a showing that the
contracting officer acted arbitrarily or capriciously."  *Id.*  Defendant-intervenor Aero-Flite argues
10 Tanker was not prejudiced because "the RFP has always said that total overall price would be
the most important price consideration," so plaintiff knew the SSA would not consider price per
gallon more heavily than overall price.  *Id.* at 21–22.  Likewise, defendant-intervenor Erickson
argued "to the extent the Solicitation specified that overall price would be assigned the greatest
weight, the Forest Service could not depart from that requirement and consider the factors on a
different basis."  Erickson's Cross-MJAR at 23.

## B.     The Government's and Defendant-Intervenors' *Blue & Gold* Arguments and Plaintiff's Reply

The government also moves to dismiss the protest, asserting 10 Tanker's "arguments
challenge the terms of the RFP itself, not the agency's evaluation of the offers, and therefore,
[its] complaint should be dismissed."  Gov't MTD & Cross-MJAR at 13.  Citing *Blue & Gold
Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), the government argues "plaintiff
waives its right to challenge a patent error in the terms of a solicitation unless it filed a formal
protest to those terms prior to the deadline for proposal submission, or, in the case of a
solicitation amendment where there is no opportunity for revised proposals, prior to award."  *Id.*
The government argues the RFP was clear about the total overall price being the most important
consideration and that 10 Tanker was thus "on notice of the metrics that would allow the agency
to evaluate their pricing proposals."  *Id.* at 14.  The government highlights "the language of the
solicitation that expressly states 'overall price is the most important factor'" and, as a result, 10
Tanker "is merely arguing that the agency's reliance on its own evaluation criteria is flawed, not

that the evaluation itself is flawed." *Id.* at 15.  While 10 Tanker alleges it was not aware of the evaluation criteria and would have submitted "more advantageous pricing" had it known price per gallon would not be as heavily considered, the government argues 10 Tanker "is an experienced contractor and has won previous Next Gen contracts using the same RFP language." *Id.* at 17.  Aero-Flite reasons:  "10 Tanker's arguments that making total overall price the most important price consideration violates CICA is a direct challenge to the terms of the solicitation, and should be rejected for the same reasons this type of challenge was rejected in *Blue & Gold*." Aero-Flite's Cross-MJAR at 8.  Aero-Flite further explains, "even if 10 Tanker's protest is not considered a direct attack on the RFP's express terms, it nonetheless falls within the expanded scope of the *Blue & Gold* waiver rule because 10 Tanker 'knew, or should have known' prior to award about all of the bases for its current protest." *Id.* at 9.  Aero-Flite stresses, "10 Tanker's argument that the government failed to evaluate the comparative costs of proposals is predicated upon 10 Tanker's own cost comparison methods that are not specified in the RFP." *Id.*  Erickson also argues, "it is clear from the Memorandum that Plaintiff's claims are rooted in the original language of the Solicitation – i.e., [sic] that overall price and not per-gallon pricing would be given the greatest emphasis."  Erickson's Cross-MJAR at 6.  Thus, Erickson argues, "the plaintiff does not allege that new, unexpected issues arose post-bid, but rather that the Forest Service should have given different weight" to the pricing factors.  *Id.* at 8.

Plaintiff reasons *Blue & Gold* "does not require participants in a procurement to preemptively presume that the procuring agency will violate federal law in the absence of a clearly expressed intention to do so."  Pl.'s Reply & Resp. at 4–5.  Plaintiff reasons, "there must be a window of time when the cause of action is ripe for challenge."  *Id.* at 6.  The government fails to "point to any actual language in the RFP indicating [the] USFS's intention to ignore the cost to the [g]overnment of the competing proposals."  *Id.* at 7.  Plaintiff argues the USFS ignored mandatory FAR requirements in considering "Next Gen 3 proposals as part of the best value analysis."  *Id.* at 8.  Plaintiff additionally stresses the government has not "demonstrated that 10 Tanker's remaining protest challenges were also waived" even if "the Court were to conclude that 10 Tanker's first cause of action regarding [the] USFS's failure to consider 'cost to the government' was waived under *Blue & Gold Fleet*."  *Id.* at 11.

### C.    Injunctive Relief

Plaintiff argues "10 Tanker has no remedy at law to address the harm it will suffer[,] . . . los[ing] its opportunity to compete fairly for the Next Gen 3 contracts, and los[ing] its opportunity to obtain profits from one or more contract awards."  Pl.'s MJAR at 37–38.  Further, "the balance of harms favors 10 Tanker" because it will "los[e] out on its primary source of income due to [the] USFS's evaluation errors," while the USFS "would not be substantially harmed by the issuance of an injunction."  *Id.* at 38.  Plaintiff also argues "an injunction is unambiguously in the public interest" because 10 Tanker has "the undisputed best technical solution at the most affordable cost to the Government at any realistic level of scale."  *Id.* at 38–39.  Plaintiff reasons selecting 10 Tanker is in the public's interest also because it could "save lives and countless millions of dollars of property damage" in addition to preserving "a fair source selection process."  *Id.* at 39. The government responds, "10 Tanker fails to identify any specific harm or damages it anticipates suffering, other than losing the opportunity to make a

profit and fairly compete for contracts if it were awarded the contract."  Gov't MTD & Cross-MJAR at 26.

## IV.     Merits Arguments Analysis

The court addresses the parties' arguments in a different order from which the parties briefed them.

### A.     Whether the SSA Failed to Consider Price Per Gallon as a Significant Part of the Best-Value Determination

Plaintiff argues price per gallon was a mandatory factor for the government to consider in its best-value determination, and "the SSA's decision to . . . disregard 10 Tanker's price per gallon advantage during the 'best value' assessment was contrary to law because it was based on an unstated evaluation criterion"—the closeness of overall price.  Pl.'s MJAR at 34.  The government acknowledges price per gallon was a required factor for consideration but emphasizes overall price was the solicitation's primary price consideration.  Gov't MTD & Cross-MJAR at 20.  Counsel for the government explained at oral argument it "did consider cost per gallon, but . . . determined that because the total overall price was so significantly higher than all the other offerors, any weight afforded to cost per gallon would not have made much of a difference in [the government's] final determination."  Tr. at 187:18–23.  Aero-Flite asserts "the RFP has always said that total overall price would be the most important price consideration," and 10 Tanker was not "misled" into believing the SSA would consider price per gallon more heavily than overall price.  Aero-Flite's Cross-MJAR at 21–22.  Erickson relatedly asserts, "the Forest Service documented the various ways in which price per gallon had been given 'meaningful consideration' in its best value analysis . . . consistent with the overall mandate that price be considered . . . even if the exact process and final outcome was not to Plaintiff's liking."  Erickson's Cross-MJAR at 22.

The solicitation states, "price will be evaluated by using a combination of the number of days awarded times the proposed availability rate plus an estimated number of flights hours (250) times the proposed flight rate plus hourly fuel burn rate times the Jet A fuel price ($5.21 per gallon) to determine the total overall price per line item for evaluation purposes only."  AR at 451 (solicitation).[2]  The solicitation also provides, "[i]n addition to total overall price, the Government will consider other price aspects, including price per gallon of retardant delivered (total cost divided by number of gallons delivered with 250 drops per year); however, total overall price will be the most important price consideration."  *Id.*  The solicitation required the parties to submit pricing information, such as their MAP and flight rates, for the USFS to calculate in its pricing formula.  AR at 237 (solicitation).  The Federal Circuit holds, "[c]ourts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be

---

[2] "Overall Price = [Total Daily Availability Rate Pricing for 5 years] + ([Total Flight Costs Per Hour] x 250 hours per year x 5 years)."  Pl.'s MJAR at 34 (emphasis omitted).

ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus.*, 586 F.3d at 1375 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

Plaintiff argues the SSA "failed to meaningfully consider or weigh 'price per gallon' pricing in the 'best value' determination" and asserts the SSA "deci[ded] to devalue and effectively disregard 10 Tanker's price per gallon advantage during the 'best value' assessment." Pl.'s MJAR at 34. The USFS's source selection decision explained: "Cost Per Gallon is a price consideration that becomes more important when the total overall price is closer amongst offerors." AR at 12933 (source selection decision). The agency understood price per gallon to be a mandatory consideration in the best-value determination: "Cost Per Gallon delivered was identified as a pricing consideration." *Id.* at 12932 (source selection decision). After calculation, the agency explained why each offeror's price per gallon rate was or was not desirable, including 10 Tanker's: "10 Tanker's large tank capacity makes their cost per gallon rate the lowest of all offerors by almost double at $4.73 per gallon." *Id.* The USFS also explained why 10 Tanker's overall proposal was not particularly valuable despite its low price per gallon: "While cost per gallon is an additional piece of information that we analyze, it becomes an important differentiator when the total overall price is within a reasonable range when comparing offers." *Id.* Plaintiff's MJAR fails to explain where the solicitation requires the government to apply plaintiff's desired weight of consideration of offerors' price per gallon. *See* Pl.'s MJAR at 33–37. The agency followed the solicitation's requirements in considering price per gallon as part of its best-value analysis, as its thorough discussion demonstrates. *See* AR at 12931–34.

Plaintiff repeatedly asserted at oral argument the government was preoccupied with the offerors' total cost at the expense of considering offerors' price per gallon. Tr. at 136:21–25 ("So when the agency focused exclusively on that one item to the exclusion of everything else, even though technical was 50 percent and . . . the cost side of the 50 percent, they overprioritized price."). The solicitation, however, was clear that overall price was the most important aspect of price in the best-value tradeoff and at oral argument counsel for the USFS explained the terms of this solicitation differed from those of Next Gen 2.0 because "the Forest Service wanted to prioritize price more [in Next Gen 3.0] than it did in 2.0. That's why price is equal to technical versus in 2.0. In 2.0, technical was significantly more than price." AR at 237 (solicitation); Tr. at 30:20–24. Counsel for the USFS also explained the agency made this change in the best-value tradeoff criteria because "most of the offerors . . . were technically fine, so they wanted to prioritize the overall price in considering who to award to." Tr. at 25:10–13. As an incumbent performer of the Next Gen 2.0 contract, 10 Tanker was on notice Next Gen 3.0 rated offerors according to a different formula, as 10 Tanker even proposed an alternative solicitation formula more favorable to its strengths. AR at 8364 (10 Tanker's proposal). Counsel for plaintiff conceded at oral argument that overall cost was most important but argued this "does not mean it could be treated as the only consideration of cost in a cost/technical relationship, and dominate everything else," and emphasized the important role plaintiff understood price per gallon must play in the government's consideration. Tr. at 137:1–4. Plaintiff additionally asserts the government should have given price per gallon additional weight in its best-value tradeoff because such consideration would be beneficial to the government. Tr. at 178:14–16. This argument, however, asks the Court to micromanage the government's application of one of the "other price aspects" that "the Government will consider" and asks the Court to second-guess the government's application of the solicitation's statement that "total overall price will be the most

important price consideration." AR at 237. "It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1355 (Fed. Cir. 2004). The Court must review "whether there is a clear error of judgment in weighing the relevant factors or whether the agency exercised its discretion based on error of law or clearly erroneous fact finding." Tr. at 186:23–187:1. Plaintiff acknowledged this standard at oral argument but also argued agencies "cannot apply unstated criteria in the best value tradeoff." *Id.* at 179:20–23. The "unstated criterion" as argued by 10 Tanker is an expression of the agency's power to balance various considerations in its decision, since "the arbitrary and capricious standard applicable here is highly deferential." *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp.*, 419 U.S. at 285). The Court finds the government's best-value determination was reasonable and in accordance with the government's "discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder . . . that will provide the agency with the best value." *Banknote*, 365 F.3d at 1355.

Plaintiff asserts the USFS improperly found its price to be outside a reasonable range for consideration. Tr. at 178:22–25. The solicitation contains no definite pricing range according to which offerors must be included or excluded, and it instead leaves the decision to the agency's discretionary balancing of proposal factors. *See* AR at 74–452 (solicitation). The agency balanced such criteria for 10 Tanker in its best-value determination: "10 Tanker's Cost Per Gallon price is better than all the other offerors but becomes less relevant when the total overall price is so significantly higher than other qualified offerors." AR at 12933 (source selection decision). The agency noted "10 Tanker has the highest total overall price by a large margin. 10 Tanker's total overall price is between $14M -$18M [sic] higher than the other offerors over the five-year performance period." *Id.* at 12932. While Coulson's total cost estimate was second highest after 10 Tanker's, in contrast to 10 Tanker's price premium of $14–18 million, the agency found Coulson's price to be in a tight grouping of similarly priced offerors: "Neptune, Aero Flite, and Coulson are all similarly priced over the five-year period with Coulson only being $289K higher annually than Neptune and Aero Flite being $22K higher annually than Neptune." *Id.* The best-value determination is complex and cannot be reduced to outer boundaries of price. *See* Tr. at 108:4–109:5. The solicitation and award decision offered great specificity regarding the consideration of price per gallon, and they demonstrate how the USFS's decision was within the best-value tradeoff framework. AR at 12932 (source selection decision). The USFS included tables in its decision explaining its calculations related to total overall cost and price per gallon. *Id.* The agency's price per gallon table described the offerors' aircrafts, payload for each tanker, and ranks the offerors lowest to highest according to price per gallon, with 10 Tanker rated first. *Id.* The agency explained the table's calculations and rankings:

> 10 Tanker's large tank capacity makes their cost per gallon rate the lowest of all offerors by almost double at $4.73 per gallon. Coulson's 737 offers the next lowest cost per gallon rate that is at least $1.50 less per gallon than all remaining offerors at $8.35 per gallon. [Erickson's] MD87's are the next best rate at $9.98 per gallon.

> Neptune and Aero Flite rates of $10.69 and $10.72 per gallon, respectively[,] are the two highest rates being offered.[3]

*Id.* After this explanation, the agency noted: "While cost per gallon is an additional piece of information that we analyze, it becomes an important differentiator when the total overall price is within a reasonable range when comparing offers." *Id.* The agency understood 10 Tanker's total overall price—the solicitation's primary and most important pricing consideration—to be the least advantageous despite its low price per gallon rate. *Id.* The Court "can set aside the agency's decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ala. Aircraft Indus.*, 586 F.3d at 1373 (quoting 5 U.S.C. § 706(2)(A) (2018)). Based on the thoroughness of the agency's decision regarding price per gallon and the narrow arbitrary and capricious standard under which this court reviews the agency's decision, the Court finds the USFS was reasonable in choosing not to award a contract to 10 Tanker under the terms of the solicitation due to 10 Tanker's significantly higher overall price. *See id.* at 1375.

### B.    Whether the Government's Best-Value Determination Was Contrary to Law[4]

Plaintiff argues the USFS's best-value determination was contrary to law because the CICA and the FAR require an agency's "primary concern" to be "the overall price the Government will actually pay" in making an award. Pl.'s MJAR at 2 (citing 41 U.S.C. § 3306(c)(1)(B); FAR § 15.405(b)). Plaintiff explains the USFS's "'best value' determination fundamentally failed to reasonably assess the cost/technical relationship of the competing proposal because the SSA never considered the comparative cost to the Government of the competing proposals in terms of what the Government can expect to pay to do this primary mission: deliver a given amount of fire retardant on fires." Pl.'s MJAR at 22. The government argues its determination was consistent with the law because it "adequately evaluated offerors'

---

[3] Erickson's final price per gallon was $9.40 based on the government's award of two line-items. Additionally, Coulson's actual price per gallon was $8.31. *See supra* Section I.

[4] The Court does not make a determination regarding the various "actual cost" calculations described by the parties outside the solicitation formula as the solicitation mandates the agency award the contract to the offeror "whose technical/cost relationship is the most advantageous to the Government after a best value tradeoff analysis has occurred." AR at 452 (solicitation); *Ala. Aircraft Indus.*, 586 F.3d at 1373 (The Court "can set aside the agency's decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"). Plaintiff's assertions on "actual cost," however, prompted the government and defendant-intervenors to consider scenarios in which 10 Tanker may be more expensive for a given amount of work than its competitors; accordingly, the Court observes that while the question plaintiff raises of actual cost to the government is not before the Court, the government and defendant-intervenors offer significant rebuttal to plaintiff's assertion. *See* Gov't MTD & Cross-MJAR at 20–22; Aero-Flite's Cross-MJAR at 11–21; Erickson's Cross-MJAR at 16–20. Aero-Flite cites one example of a March 2021 Minnesota Oxcart fire to describe how 10 Tanker's pricing is not always advantageous to the government—fires in parts of the country where 10 Tanker does not have access to nearby bases that other offerors had access to. Aero-Flite's Cross-MJAR at 15–18; Tr. at 138:4–13. According to this argument, 10 Tanker's VLATs might not always provide the lowest cost to the government because its air tankers' very large size prevents them from docking in smaller bases, which could force 10 Tanker to make longer and less-efficient trips to fight certain fires. *Id.* at 138:14–16. Counsel for Aero-Flite also asserted at oral argument that 10 Tanker may not always use its full payload, an assumption upon which 10 Tanker's efficiency argument rested. *Id.* at 141:19–20. Counsel for the government similarly noted: "10 Tanker does present a larger tank as being a larger aircraft; however, the firefighting missions are unique, . . . and even with an initial attack, you have to make targeted drops." *Id.* at 46:22–47:2 (citing AR at 316).

total overall price and weighed it against the technical ratings developed by the Technical Evaluation Board."  Gov't MTD & Cross-MJAR at 18.  The USFS asserts it "followed a detailed formula that incorporated several different metrics that together demonstrated what the Government will actually pay with respect to the use of the air tankers" and this formula was made clear in the solicitation.  *Id.*  While the solicitation noted the SSA may weigh other price considerations, the solicitation was explicit about total overall price being the most important of the SSA's pricing considerations.  *Id.*

The Federal Circuit holds, "[c]ourts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Ala. Aircraft Indus.*, 586 F.3d at 1375 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).  The solicitation states, "price will be evaluated by using a combination of the number of days awarded times the proposed availability rate plus annual number of flights hours (250) times the proposed flight rate plus hourly fuel burn rate times the Jet A fuel price ($5.21 per gallon) to determine the total overall price per line item for evaluation purposes only."  AR at 237 (solicitation).  The solicitation also provides, "in addition to total overall price, the Government will consider other price aspects, including price per gallon of retardant delivered (total cost divided by number of gallons delivered with 250 drops per year); however, total overall price will be the most important price consideration."  *Id.*  The solicitation further notes the agency will award the contract to the offeror "whose technical/cost relationship is the most advantageous to the Government after a best value tradeoff analysis has occurred."  *Id.* at 452 (solicitation).

The USFS understood the solicitation's formula to be a mandatory calculation in the best-value determination, including cost per gallon.  AR at 12932 (source selection decision).  After calculation, the agency explained why 10 Tanker's proposal was not particularly valuable despite its low price per gallon, when evaluating offerors' total overall price weighed against technical ratings.  *Id.* ("While cost per gallon is an additional piece of information that we analyze, it becomes an important differentiator when the total overall price is within a reasonable range when comparing offers.").  The solicitation did not require the USFS to do more than merely consider the offerors' pricing information, such as calculating the overall price the Government will actually pay.  AR at 237 (solicitation).  The agency properly followed the solicitation's formula in calculating overall price for each offeror and gave overall price the most weight in its decision, in accordance with the solicitation's terms.  The agency's best-value determination was not contrary to law because it followed the terms of the solicitation in making its determination.  The agency explained while 10 Tanker had the lowest price per gallon at $4.73, "10 Tanker's total overall price is significantly higher than all other offerors," with 10 Tanker offering $55,606,875, while Neptune offered $40,080,650; Aero-Flite offered $40,194,305; Coulson offered $41,528,725; and Erickson offered $35,250,765 per air tanker for an award of two air tanker contracts.  AR at 12577 (10 Tanker 30 October 2020 post-award debriefing), 12933.  As such, the agency ranked 10 Tanker last in the best-value determination because of its highest overall price.  *Id.*  The government's decision to consider price and technical factors in this way was not contrary to law; rather, it was in accordance with the terms of the solicitation.  *See* AR at 237 (solicitation).  In asserting the agency failed to consider "the overall price the Government

will actually pay," plaintiff is protesting the weight the USFS placed on price per gallon. Plaintiff conceded at oral argument overall cost was most important but argued this "does not mean it could be treated as the only consideration of cost in a cost/technical relationship, and dominate everything else." Tr. at 137:1–4. The Court "can set aside the agency's decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ala. Aircraft Indus.*, 586 F.3d at 1373 (citing 5 U.S.C. § 706(2)(A)). The agency is permitted to exercise discretion in making its award decision because "the arbitrary and capricious standard applicable here is highly deferential," and plaintiff has failed to demonstrate that the government's award decision was "not in accordance with law." *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp.*, 419 U.S. at 285); *Ala. Aircraft Indus.*, 586 F.3d at 1373.

### C.   Whether the SSA Erred in Relying on a Mistake of Fact Regarding Plaintiff's "Price Premium"

Plaintiff argues the SSA made its "price premium" determination on a mistake of fact because the government will never pay "33%-58%" more under a 10 Tanker contract than it would under other offerors. Pl.'s MJAR at 31. The government responds by arguing 10 Tanker "cannot demonstrate that the Forest Service acted arbitrarily or capriciously by weighing 10 Tanker's overall price proposal against its technical factors" in accordance with the solicitation. Gov't MTD & Cross-MJAR at 20.

The Federal Circuit holds, "[c]ourts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus.*, 586 F.3d at 1375 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). The solicitation provides the agency will award the contract to the offeror "whose technical/cost relationship is the most advantageous to the Government after a best value tradeoff analysis has occurred." AR at 452 (solicitation). Plaintiff argues the agency failed to consider this solicitation term when analyzing whether 10 Tanker's overall cost and price per gallon presented the best-value. Pl.'s MJAR at 32. The solicitation also provides, "total overall price will be the most important price consideration." AR at 237 (solicitation). The government argues under the solicitation 10 Tanker "cannot show that using overall price . . . as the principal price factor was arbitrary, because doing so was consistent with the solicitation criteria." Gov't MTD & Cross-MJAR at 20.

The USFS understood 10 Tanker's total cost estimate to be properly calculated according to the formula, using the overall price and tanker size 10 Tanker provided. AR at 12933 (source selection decision). The USFS detailed in its best-value determination its consideration of overall price and ranking of offerors. *Id.* at 12932. The USFS reiterated in its determination, "Total Overall Price was identified in the RFP as being the most important price consideration." *Id.* The USFS included tables and a detailed explanation of its consideration. *Id.* at 12933 (source selection decision). The agency reasoned, "based on the slight differences in technical proposals, and that all offerors have acceptable technical proposals, there is no value in paying the significantly higher price premium to award to 10 Tanker." *Id.*

The agency followed the solicitation's requirements in considering overall cost as the most important price consideration. AR at 452 (solicitation); *see supra* Section IV.A. When asked at oral argument how plaintiff's price premium argument differs from its previous arguments, plaintiff responded, "it is a separate argument because it is simply an assertion that the SSA made a mistake in factual conclusion during the evaluation process." Tr. at 177:4–7. Plaintiff's arguments regarding price per gallon and price premium, however, both rest on similar logic—10 Tanker's price is most beneficial to the government if the agency affords price per gallon significant weight. The agency's contract award decision was based on the terms of the solicitation and 10 Tanker's significantly higher price. AR at 12933 (source selection decision). Plaintiff asserts no "price premium" exists because "10 Tanker is doing 235–313% more work than its competitors," but the solicitation does not prioritize efficiency or gallon size in its determination. Pl.'s MJAR at 31. The USFS understood 10 Tanker's price premium to be disadvantageous, despite its low price per gallon rate. AR at 12933 (source selection decision). The Court "can set aside the agency's decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ala. Aircraft Indus.*, 586 F.3d at 1373 (citing 5 U.S.C. § 706(2)(A)). Based on the thoroughness of the agency's decision regarding overall price and the narrow arbitrary and capricious standard under which this Court reviews the agency's determination, the USFS's rejection of 10 Tanker's proposal due to its price premium was not arbitrary and capricious as a matter of law. *See Ala Aircraft Indus.*, 586 F.3d at 1375.

## V.    *Blue & Gold* **Analysis**

In addition to responding to plaintiff's arguments on the merits, the government and defendant-intervenors assert plaintiff's arguments are time barred under the Federal Circuit's decision in *Blue & Gold*, which held:  a plaintiff who "has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). Absent such "a waiver rule, a contractor with knowledge of a solicitation defect could choose to stay silent when submitting its first proposal," and should it "lose[] to another bidder, the contractor could then come forward with the defect to restart the bidding process, perhaps with increased knowledge of its competitors." *Id.* at 1314. Accordingly, the *Blue & Gold* waiver rule "prevents contractors from taking advantage of the government and other bidders, and avoids costly after-the-fact litigation." *Id.*

Plaintiff in *Blue & Gold* alleged the agency erroneously analyzed the awardee's proposal to be financially advantageous for the government because the awardee's proposal did not comply with the Service Contract Act. *Id.* at 1312. The solicitation, however, did not apply the Service Contract Act to the procurement. *Id.* The agency in *Blue & Gold* was required, by statute, to "evaluate . . . proposals and make an award based solely on the factors specified in the solicitation." *Id.* at 1313 (quoting 10 U.S.C. § 2305(b)(1)). The Federal Circuit recognized the claim was "properly characterized as a challenge to the terms of the solicitation," despite plaintiff's argument its claim was "a challenge to the evaluation of [awardee's] proposal." *Id.*

According to the government, "it is clear that 10 Tanker's protest amounts to nothing more than a challenge to what it perceives is a patent error in the Forest Service's pricing terms

as laid out in the RFP." Gov't MTD & Cross-MJAR at 13. The government adds, "[w]ithin each argument, 10 Tanker challenges the weight that the U.S. Forest Service placed on total overall price compared to the weight given to price per gallon despite the express language of the RFP." *Id.* at 13–14. Specifically, the government asserts "the complaint should be dismissed." *Id.* at 13. Erickson argues "[p]ursuant to Rule 12(b)(6), all of the Plaintiff's claims should be dismissed" according to *Blue & Gold* and 28 U.S.C. § 1491(b). Erickson's Cross-MJAR at 4–5 (quoting *Blue & Gold*, 492 F.3d at 1313). Aero-Flite similarly alleges "10 Tanker's protest is a direct challenge to th[e] language [of the solicitation,] which should have been raised prior to award in a preaward protest and should now be dismissed as untimely." Aero-Flite's Cross-MJAR at 8 (citing *Blue & Gold*, 492 F.3d at 1313).[5]

## A.     Plaintiff's Price Per Gallon Argument as It Relates to *Blue & Gold*

Along with arguments on the merits, the government argues plaintiff's assertion the USFS failed to give price per gallon meaningful weight is time barred under *Blue & Gold*. Gov't MTD & Cross-MJAR at 14. The government asserts plaintiff's "protest is an attempt by 10 Tanker to change the evaluation criteria or the manner in which the agency evaluates all offerors to give them a clear advantage." Gov't MTD & Cross-MJAR at 17. The government explains, "if 10 Tanker wanted more clarity on how the price per gallon would have been considered or even if they felt that there was any ambiguity to the extent for which it would be considered, it should have raised such concerns during the bidding process in a formal protest." *Id.* The government further asserts, "the Court should dismiss the bid protest in its entirety because 10

---

[5] Erickson specifically requests the Court dismiss plaintiff's claims according to the *Blue & Gold* waiver rule under RCFC 12(b)(6), while the government and Aero-Flite do not specifically state which court rule to apply. Earlier this year, Court of Federal Claims Judge Hertling considered application of the Federal Circuit's *Blue & Gold* waiver rule: "There is uncertainty whether the *Blue & Gold Fleet* waiver rule is jurisdictional. The defendant has moved to dismiss either for lack of subject-matter jurisdiction under RCFC 12(b)(1) or, in the alternative, for failure to state a claim under RCFC 12(b)(6)." *SEKRI, Inc. v. United States*, 152 Fed. Cl. 742, 751–52 (2021). Judge Hertling's decision in *SEKRI* continues:

> Section 1491(b)(3) provides in full: "*In exercising jurisdiction under this subsection*, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3) (emphasis added). In other words, once the plaintiff has established jurisdiction, § 1491(b)(3) limits the relief that can be granted, requiring the court to "give due regard to . . . the need for expeditious resolution of the action." *See id.* The court, for example, cannot grant relief to a protestor who challenges the terms of a solicitation years after the proposal deadline, even if the protestor's complaint is filed before the statute of limitations. *See* 28 U.S.C. § 2501 (establishing the Tucker Act's six-year statute of limitations). Otherwise, the court would run counter to § 1491(b)(3)'s mandate. . . .

> The court in *Inserso* describes the waiver rule as a limit on the protestor's right to relief, not a limit on jurisdiction. *See Inserso* [*Corp. v. United States*], 961 F.3d [1343,] 1352 [(Fed. Cir. 2020)].

> Because the Court determines that the *Blue & Gold Fleet* waiver rule is not jurisdictional, the defendant's motion does not put jurisdiction in question. Accordingly, the Court will consider the defendant's motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

*Id.* at 752–54. The Court will accordingly construe the government and defendant-intervenors' *Blue & Gold* arguments as requesting dismissal of plaintiff's claims under RCFC 12(b)(6).

Tanker's challenges are to the agency's evaluation criteria, not its best value determination," meaning 10 Tanker waived such challenges by not raising them before bidding. *Id.* At oral argument, counsel for the government stressed, "10 Tanker didn't raise these objections, even though it was noted in their proposal, in their alternate proposal, in a question and answer, and, again, noted from the understanding of the previous decision that was pulled back from the corrective action that this is how they were going to be evaluated" regarding overall price. Tr. at 206:24–207:4.

Along with arguments on the merits, Aero-Flite argues, "10 Tanker 'knew or should have known' prior to award about all of the bases for its current protest." Aero-Flite's Cross-MJAR at 9 (quoting *Inserso Corp. v. United States*, 961 F.3d 1343, 1350 (Fed. Cir. 2020)). Defendant-intervenor Aero-Flite reasons "10 Tanker took a 'wait and see' approach that is fundamentally unfair in order to gain an advantage." *Id.* at 10 (quoting *Peraton Inc. v. United States*, 146 Fed. Cl. 94, 102 (Fed. Cl. 2019))

Plaintiff argues the USFS failed to give price per gallon meaningful weight during the best-value determination and used the closeness of overall price as an unstated criterion in its evaluation. Pl.'s MJAR at 34; *see supra* Section IV.A. Plaintiff argues its "challenge to the SSA's application of an unstated inverse weighting [sic] scheme between overall price and price per gallon is an allegation grounded in the RFP's stated evaluation criteria, not a challenge to those criteria." Pl.'s Reply & Resp. at 14. Plaintiff further reasons it "cannot reasonably be said to have waived this challenge to the SSA's application of entirely unstated conditionally-applicable evaluation method on the basis of the fact that 10 Tanker was not sufficiently clairvoyant to predict that the SSA would do it." *Id.* at 15. At oral argument, plaintiff argued, "[w]e have never said in our MJAR briefing or in our complaint that price per gallon was the only way to look at comparative costs." Tr. at 216:10–12. Plaintiff further reasoned, "[i]f you reframe [10 Tanker's argument] and present it as a strawman that we are challenging the weighting [sic] of overall price or trying to change the formula, it will be a *Blue & Gold Fleet* issue, but it's not what we've argued." *Id.* at 215:14–18. Counsel for plaintiff did concede, however, the solicitation's formula favors LATs and as a result is unfair to VLATs like 10 Tanker's fleet: "I would say that certainly the formula taken in isolation, out of context of the rest of the evaluation, would lean towards favoring a plane with a smaller tank that burns less fuel to fly." *Id.* at 54:4–7; AR at 262–63 (solicitation). Replying to Aero-Flite's arguments, plaintiff asserted *Inserso* is different than this case because it is "related to the fairness of the competitive ground-rules of the competition established in the RFP, and whether certain offerors may have a built-in advantage due to other circumstances that foreseeably arose during the procurement." Pl.'s Reply & Resp. at 5 n.1.

The Federal Circuit explained the difference between patent and latent ambiguity in *Per Aarsleff*, a 2016 case applying *Blue & Gold*:

> A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties. By contrast, [a] latent ambiguity is a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary

care, and is not so patent and glaring as to impose an affirmative duty on plaintiff
to seek clarification.

*Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016) (internal quotation
marks and citations omitted).

Plaintiff could have "discovered by reasonable and customary care"—specifically by
reading the terms of the solicitation—the agency would weigh all technical factors as equal to
price and could have presented a lower overall cost—as defendant-intervenors did—to ensure its
price remained competitive. *Id.* Plaintiff understood the differences between the Next Gen 2.0
and 3.0 contracts before submitting its proposal and, consequently, could have objected to the
terms pre-award in taking issue with the best-value determination. *See supra* Section I.A; *Blue
& Gold*, 492 F.3d at 1313. While the Next Gen 2.0 contract gave more weight to technical
evaluation factors, the Next Gen 3.0 contract made price equal to all the technical components
combined. Tr. at 22:18–20; AR at 238 (solicitation). Plaintiff, however, is time barred from this
challenge because it had "the opportunity to object to the terms of a government solicitation . . .
prior to the close of the bidding process" and failed to do so. *Blue & Gold*, 492 F.3d at 1313.

In addition to recognizing this difference between contract evaluation schemes, plaintiff
acknowledges its history of filing pre-award protests, as opposed to post-award protests, related
to pricing. *See* AR at 12246 (plaintiff recognizes it has "fought for years" for a different pricing
methodology); Tr. at 80:20–21 ("There were no post-award protests 10 Tanker ever filed since
2020."). Instead of challenging the solicitation prior to the close of the bidding process as it has
done in the past, 10 Tanker merely provided an alternate proposal suggesting another way to
calculate price, which made price per gallon the most important pricing factor. AR at 8362
("Unless you believe that a gallon of retardant dropped from a DC-10 is less than half as
effective as retardant dropped from a LAT, it is undeniable that the best value for the
government must consider the delivered cost per gallon of retardant as the most important price
evaluation factor."). Plaintiff understood how the Next Gen 3.0 algorithm functioned and how
the formula was unfavorable to larger aircrafts given its emphasis on overall cost, and plaintiff
was therefore on notice to file a pre-award protest. *See Blue & Gold*, 492 F.3d at 1313 (holding
a plaintiff who "has the opportunity to object to the terms of a government solicitation containing
a patent error and fails to do so prior to the close of the bidding process waives its ability to raise
the same objection subsequently in a bid protest action in the Court of Federal Claims.").
Plaintiff at oral argument conceded the solicitation's formula is unfavorable to VLATs like 10
Tanker. Tr. at 54:4–7 ("I would say that certainly the formula taken in isolation, out of context
of the rest of the evaluation, would lean towards favoring a plane with a smaller tank that burns
less fuel to fly."). Plaintiff's concession amounts to recognition that the formula was
disadvantageous to its tankers. As such, plaintiff's protest and alternate proposal are inherent
recognitions of its dispute with the solicitation's formula because they challenge how the agency
calculates overall price. At oral argument, plaintiff stated its alternate proposal was merely a
disagreement with the government's priority, rather than a challenge to the solicitation: "It was a
stated opinion of 10 Tanker that . . . price per gallon in the opinion of 10 Tanker would be
something they should think more about." Tr. at 62:23–64:1. Plaintiff further detailed,
"ultimately 10 Tanker assented to the terms of the RFP and complied with them," in explaining
why it included an alternate proposal. *Id.* at 63:1–2. Accordingly, plaintiff "ha[d] the

opportunity to object to the terms of a government solicitation containing [an alleged] patent error and fail[ed] to do so prior to the close of the bidding process." *Per Aarsleff*, 829 F.3d at 1312. As concluded in Section IV, *supra*, the government conducted a reasonable inquiry into the best-value determination. Alternatively, the Court also finds plaintiff's argument to be time barred under Rule 12(b)(6) in this instance because plaintiff asks the Court to analyze how the agency calculates price, challenging the terms of the solicitation, so the Court grants the government's and defendant-intervenors' motions to dismiss according to RCFC 12(b)(6). *See Blue & Gold*, 492 F.3d at 1313; *Inserso*, 961 F.3d at 1352; *SEKRI*, 152 Fed. Cl. at 751–54.

## B.    Whether Plaintiff's Argument the Government's Best-Value Determination Is Contrary to Law Is Time Barred Under *Blue & Gold*

Along with responding on the merits, the government asserts 10 Tanker's argument that the agency's best-value determination was contrary to law contests the terms of the solicitation and is thus barred under *Blue & Gold* because "the offerors were on notice of the metrics that would allow the agency to evaluate their pricing proposals." Gov't MTD & Cross-MJAR at 14 (citing AR at 443 (solicitation)). The government argues, "the error complained of is clearly patent:  the overall price formula presented directly in the solicitation." *Id.* The government asserts 10 Tanker should have raised its concern with the weight the solicitation required the SSA to give to the overall price before the deadline for proposal, but instead waived such arguments in failing to do so within the appropriate timeframe. *Id.* Plaintiff "cannot now, over a year after the proposal submission deadline, complain that the solicitation terms do not adequately allow for the agency to evaluate price." *Id.*

Plaintiff's MJAR argues the agency's best-value determination is contrary to law because the CICA and the FAR require an agency's "primary concern" to be "the overall price the Government will actually pay" in making an award. Pl.'s MJAR at 20 (quoting 41 U.S.C. § 3306(c)(1)(B); FAR § 15.405(b)); *see supra* Section IV.B. The solicitation states, "price will be evaluated by using a combination of the number of days awarded times the proposed availability rate plus an estimated number of flights hours (250) times the proposed flight rate plus hourly fuel burn rate times the Jet A fuel price ($5.21 per gallon) to determine the total overall price per line item for evaluation purposes only." AR at 237 (solicitation). The solicitation also provides, "in addition to total overall price, the Government will consider other price aspects, including price per gallon of retardant delivered (total cost divided by number of gallons delivered with 250 drops per year); however, total overall price will be the most important price consideration." *Id.* The solicitation formula thus explains how the agency calculates overall price and how it puts the most weight on overall price compared to other pricing factors. *Id.* The agency properly followed the solicitation's formula in calculating overall price for each offeror and gave overall price the most weight, according to the solicitation's terms. The agency explained while 10 Tanker had the lowest price per gallon at $4.73, "10 Tanker's total overall price is significantly higher than all other offerors," with 10 Tanker offering $55,606,875, while Neptune offered $40,080,650; Aero-Flite offered $40,194,305; Coulson offered $41,528,725; and Erickson offered $35,250,765 per air tanker for an award of two air tanker contracts. AR at 12577 (10 Tanker 30 October 2020 post-award debriefing), 12933. The agency ranked 10 Tanker last in the best-value determination because of its highest overall price. *Id.* Despite the USFS correctly following the solicitation and plaintiff's

protest thereof, plaintiff asserts, "10 Tanker has not alleged that [patent] errors exist in the Next Gen 3 RFP." Pl.'s Reply & Resp. at 8. Plaintiff reasons the solicitation "neither state[s] nor impl[ies] that [the] USFS would ignore the mandatory requirement to consider 'the overall price the Government will actually pay' under those competing Next Gen 3 proposals as part of the best value analysis." *Id.* (quoting 41 U.S.C. § 3306(c)(1)(B); FAR § 15.405(b)).

At the time of the solicitation, plaintiff could have "discovered by reasonable and customary care" that the agency would prioritize overall price in its best-value determination as stated in the solicitation, as opposed to price per gallon or the "price the Government will actually pay." *Per Aarsleff*, 829 F.3d at 1312. The USFS properly followed the solicitation's algorithm in calculating overall price and prioritizing overall price over other pricing factors. AR at 237 (solicitation), 12483 (best-value determination); *see supra* Section IV.B. Plaintiff could have objected to the terms of the best-value tradeoff pre-award because it was aware of the formula's weight on overall price before it submitted its offer. Instead, the plaintiff brought the protest too late to object to the terms of the solicitation. *See Blue & Gold*, 492 F.3d at 1313. If plaintiff's disagreement is ultimately with the weight the government put on plaintiff's total price, then plaintiff takes issue with the formula by which the agency is bound, rather than the agency's evaluation process. The Court finds plaintiff "ha[d] the opportunity to object to the terms of a government solicitation containing [an alleged] patent error and fail[ed] to do so prior to the close of the bidding process." *Per Aarsleff*, 829 F.3d at 1312. As the Court concluded in Section IV, *supra*, the government conducted a reasonable inquiry into the best-value determination. Alternatively, the Court also finds plaintiff's argument to be time barred because plaintiff asks the Court to analyze whether the agency appropriately calculated price, a challenge to the terms of the solicitation; the Court thus grants the government's and defendant-intervenors' motions to dismiss according to RCFC 12(b)(6) on this argument. *See Blue & Gold*, 492 F.3d at 1313; *Inserso*, 961 F.3d at 1352; *SEKRI*, 152 Fed. Cl. at 751–54.

## C. Whether Plaintiff's "Price Premium" Mistake of Fact Argument Is Time Barred Under *Blue & Gold*

The government further asserts 10 Tanker's argument that the SSA was mistaken in finding 10 Tanker had a price premium "fails to confront the language of the solicitation that expressly states 'overall price is the most important factor.'" Gov't MTD & Cross-MJAR at 15 (quoting AR at 451 (solicitation)). The government notes 10 Tanker was "on actual notice that the agency did not intend to prioritize price or cost per gallon in its evaluation" because the agency "informed all offerors that it did not intend to amend its evaluation criteria for price" during the amendment process. Gov't MTD & Cross-MJAR at 16. Plaintiff was on notice of the agency's evaluation criteria not only because of the solicitation's explicit language, but also because the agency made its evaluation criteria emphasizing overall price over cost per gallon clear during the amendment process. *Id.* at 16. Erickson cites this court's decision in *Linc* for the proposition that the agency's compliance with the solicitation formula was rational, arguing there is no exact "language that constrains or even addresses the precise method that a procuring agency must use in evaluating either price or cost." Erickson's Cross-MJAR at 13 (quoting *Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 713 (2010)). Counsel for Erickson asserted at oral argument: "As mandated by the solicitation, and as mandated by controlling law from the Federal Circuit that says that the FAR doesn't tell the government how it has to evaluate price

and what it has to value, and it's not the province of the Court to tell the government that." Tr. at 176:8–13.

Plaintiff argues the agency relied on a mistake of fact in stating 10 Tanker's overall price constituted a "price premium" because 10 Tanker's proposal will never cost the Government more than other offerors' proposals. Pl.'s MJAR at 31; *see supra* Section IV.C. Plaintiff responds to the timeliness arguments by arguing it alleges a mistake of fact on the part of the government, rather than challenging the terms of the solicitation, since, according to plaintiff, the SSA did not show why 10 Tanker's proposal will ever cost the Government more "when weighed against the working assumptions of the RFP about how aircraft will operate." Pl.'s Reply & Resp. at 12. Plaintiff reasons "the assumed equivalence of 'Overall Price' and what the Government would have to 'pay' the contractors has no grounding in the RFP or common sense." *Id.* at 13. Plaintiff further argues "the conclusion that pricing differences born of an apples-to-oranges calculation of workload constitutes a 'price premium' that the Government will be required to 'pay' is simply wrong as a matter of basic fact." *Id.* at 14. At oral argument, counsel for plaintiff argued the solicitation "required a technical/cost tradeoff assessment," and "the government . . . is required under the FAR to consider what the cost the government is actually going to pay." *Id.* at 160:3–8. Counsel for plaintiff further explained at oral argument the solicitation requires air tankers to carry a full load, contrary to the government's suggestion, and "whether hypothetically or theoretically, there is a scenario once in a while where someone might not drop their full tank [is] . . . not really the issue." *Id.* at 57:3–6.

At the time of the solicitation, plaintiff could have "discovered by reasonable and customary care" the agency would prioritize overall price over price per gallon in its best-value determination. *Per Aarsleff*, 829 F.3d at 1312. Plaintiff also could have objected at the pre-award stage to the agency's pricing formula and how it would calculate 10 Tanker's offer. *See Blue & Gold*, 492 F.3d at 1313. Instead, plaintiff merely offered a greater price, as compared to its competitors, and when the USFS received the offer detail, the USFS applied it to the solicitation-mandated formula. *See supra* Section V.B. The Court finds plaintiff "ha[d] the opportunity to object to the terms of a government solicitation containing [an alleged] patent error and fail[ed] to do so prior to the close of the bidding process." *Per Aarsleff*, 829 F.3d at 1312. As the Court concluded in Section IV, *supra*, the government conducted a reasonable inquiry into the best-value determination. Alternatively, the Court also finds plaintiff's argument to be time barred because plaintiff asks the Court to analyze how the agency calculates price, a challenge to the terms of the solicitation; the Court thus grants the government's and defendant-intervenor's motions to dismiss according to RCFC 12(b)(6) on this argument. *See Blue & Gold*, 492 F.3d at 1313; *Inserso*, 961 F.3d at 1352; *SEKRI*, 152 Fed. Cl. at 751–54.

## VI.    Injunctive Relief

Plaintiff seeks a permanent injunction. *See* Pl.'s MJAR at 37. The Court considers the following factors when determining whether to issue a permanent injunction: "(1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed.

Cir. 2004).  According to the first factor, plaintiff is not entitled to injunctive relief because plaintiff does not prevail on the merits.  The Court therefore does not consider the remaining factors.  *Info. Tech. & Apps. Corp. v. United States*, 51 Fed. Cl. 340, 357 n.32 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) ("Absent success on the merits, the other factors are irrelevant.").

**VII.    Conclusion**

  For the foregoing reasons, the Court **DENIES** plaintiff's motion for judgment on the administrative record, **GRANTS** the government's and defendant-intervenors' cross-motions for judgment on the administrative record, and alternatively **GRANTS** the government's and defendant-intervenors' motions to dismiss according to RCFC 12(b)(6).  The Clerk is directed to enter judgment accordingly.

  **IT IS SO ORDERED.**

s/ Ryan T. Holte  
RYAN T. HOLTE
Judge
